UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALYSA A. RICH, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:16-cv-00335-DML-SEB ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security, Administration, | ) ) ) ) |
|     Defendant. | ) ) |

## Decision on Complaint for Judicial Review

Plaintiff Alysa A. Rich applied in November 2012 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since March 20, 2012. Acting for the Commissioner of the Social Security Administration following a hearing held August 8, 2014, administrative law judge Ronald T. Jordan issued a decision on September 12, 2014, finding that Ms. Rich is not disabled. The Appeals Council denied review of the ALJ's decision on December 21, 2015, rendering the ALJ's decision for the Commissioner final. Ms. Rich timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

Ms. Rich contends the Commissioner's decision must be reversed and remanded because the ALJ's credibility determination is patently erroneous and, in determining the RFC, the ALJ failed to consider the long-standing edema (swelling) in her legs and did not evaluate at all a functional capacity opinion provided by her chiropractor.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Ms. Rich's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2] Ms. Rich is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work

---

[2] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the

4

evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Rich was born in 1965, was 46 years old at the alleged onset of her disability in 2012 and 48 years old at the time of the ALJ's decision. She worked for nearly 20 years at a Wal-Mart, in varying capacities and departments, and her last position was a cashier. (R. 38-39). She was fired because of attendance issues; she had accumulated too many points after absences due to her medical problems (problems with her feet, knees, shoulders, and hands) and because of "some other family problems." (R. 39).

At step one, the ALJ found that Ms. Rich had not engaged in substantial gainful activity since her alleged onset date in March 2012. At step two, he determined that her severe impairments were venous insufficiency, morbid obesity, obstructive sleep apnea, osteoarthritis of the knee, cervical spine, and left shoulder, and plantar fasciitis/right heel spur. He found no listings were met or medically equaled at step three.

In his RFC, the ALJ limited Ms. Rich to a "range of light work." He found she is capable of standing and of walking up to two hours and sitting six hours in an eight-hour work day, can lift/carry/push/pull 20 pounds occasionally and 10 pounds

5

frequently,[3] and can only occasionally stoop, balance, crouch, kneel, crawl, and climb stairs or ramps. He forbad dangerous conditions of climbing ladders, ropes, or scaffolds, and being around unprotected heights or unguarded moving machinery. (R. 22). The ALJ found at step four that Ms. Rich cannot perform her past relevant work because that required more standing and walking than her RFC permits. At step five, and based on the testimony of a vocational expert, the ALJ decided Ms. Rich is capable of performing the functions of three light-level, unskilled jobs. They are bus monitor (DOT # 372.667-042, with 300 jobs available in Indiana, according to the VE), collator operator (DOT # 208.685-010, with 672 jobs available in Indiana), and information clerk (DOT # 237.367-018), with 1,600 jobs available in Indiana). The VE testified that these are classified as light-level jobs because "of the lifting primarily." (R. 51).[4]

---

[3] Even though the ALJ classified her RFC as involving a "range of light work," it has the characteristics of sedentary work, other than lifting/carrying. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in [the light] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[4] The court notes that lifting demands at a light level (frequent lifting or carrying of objects weighing up to 10 pounds) do not seem to be suggested by the descriptions of these positions in the DOT, and that the descriptions of bus monitor and collator operator appear to require frequent movement in standing or walking.

6

Based on his reliance on the VE, the ALJ thus found at step five that Ms. Rich is not disabled.

## II. Ms. Rich's Assertions of Error

Ms. Rich contends that the ALJ's RFC is erroneous, requiring remand because the ALJ did not mention—let alone evaluate—the opinion of her chiropractor about her functional capacity, and his credibility analysis is patently erroneous. As addressed below, the first error requires remand. The court also addresses the ALJ's credibility evaluation.

### A. The ALJ erred by failing to evaluate the opinion of Ms. Rich's chiropractor.

The ALJ's decision omits any mention of the opinion by Ms. Rich's chiropractor about her functional abilities.

Although a chiropractor is not an "acceptable medical source" in the parlance of Social Security regulations, that does not mean her opinion about the claimant's functioning can be ignored. It means only that a chiropractor cannot offer a "medical opinion" and cannot be considered a "treating physician," whose opinion can be entitled to controlling weight. *See* 20 C.F.R. § 404.1513(a); SSR 06-3p. The opinion of an "unacceptable" medical source still must be evaluated by an ALJ, and the weight an ALJ gives it depends on the same types of factors that the ALJ considers in evaluating medical opinions generally. 20 C.F.R. § 404.1527(f). That is, the weight it deserves must be based on the degree to which the opinion (a) is supported by relevant evidence and explanations; (b) considered all pertinent evidence; (c) is consistent with the record as a whole; and (d) is grounded in the

7

person's field of specialty. The nature and extent of the treatment relationship with the claimant is also considered. 20 C.F.R. § 404.1527(c)(1)-(6). *See Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014) (addressing the applicability of these factors to an ALJ's evaluation of the weight to give to the opinion of a disability claimant's chiropractor).

Ms. Rich's chiropractor (Rita J. Steffey) completed a residual functional capacity questionnaire dated December 2012 and a "case summary." She stated that Ms. Rich has painful, swollen feet and ankles, hip and leg pain, and pain in her right shoulder and upper back. (R. 338). She began seeing Ms. Rich in July 2012. In her opinion, Ms. Rich's sitting and standing/walking abilities are very limited due to her ailments, and she can sit four hours in a work day and stand/walk up to one hour, with the need to shift at-will between positions of sitting, standing, and walking. (R. 335).

The ALJ did not mention Steffey at all in his decision. He did not evaluate her opinion about Ms. Rich's functional capacity. In fact, it appears that the ALJ never saw the opinion. He noted in his decision that, other than opinions by the state agency reviewing physicians, there were no assessments of Ms. Rich's functional limitations by any "examining or treating health care professional." (R. 27). That's not true, since Steffey is at the very least a health care professional that examined and treated Ms. Rich. The Commissioner's attempt to excuse the ALJ's failure to even evaluate Steffey' opinion falls short. She argues that because the ALJ gave significant weight to the opinions of state reviewing physicians about Ms.

8

Rich's RFC and Steffey's opinion was in the administrative record when they reviewed the file, then necessarily any error in not evaluating the opinion is simply harmless.

The court disagrees. First, the agency reviewing physicians mentioned nothing about Steffey's opinion, and thus one cannot conclude that the ALJ made some assessment of Steffey's opinion through his reliance on the reviewing physicians' documentation. Second, significant additional medical evidence was added to the record after those physicians' review of the record, and that additional evidence could be evaluated as more consistent with Steffey's opinion than with the agency reviewing physicians' opinions. Ms. Rich's medical impairments, as the ALJ found, include problems associated with the pain and swelling symptoms noted by the chiropractor. The ALJ found her severe impairments include venous insufficiency, morbid obesity, plantar fasciitis/right heel spur, and osteoarthritis of the left knee, cervical spine, and left shoulder. The medical evidence reflects a continuous history of severe swelling in her legs and feet, an ultimate diagnosis of venous insufficiency, difficulties walking because of knee and foot pain and swelling, and her attempts to relieve the problems through various medical interventions. She underwent cortisone injections, had surgery on her knee, took medication to help the swelling, wore a brace/splint, tried physical therapy, tried a boot, took pain medication, used a cane sometimes, and tried compression stockings. *See* description at Dkt. 20, pp. 7-10. The compression stockings were themselves painful because they tended to roll down her leg and cut into her skin; the pain was

9

great enough that she discontinued wearing them but has learned through the vein clinic she visits that there is a type of glue that she can use to hold them in place. (R. 46-47).

It was the ALJ's job to evaluate Steffey's opinion in light of all of the evidence in the record, and his failure to do so cannot be excused as harmless. Remand is required on this basis alone.

### B. Other errors can be addressed on remand.

The court also agrees with Ms. Rich that the ALJ's credibility determination is problematic. The court highlights three matters here. First, despite all of the medical evidence of severe swelling in the legs and feet and continuous treatment over years by various doctors, the ALJ determined that the symptoms of that swelling must not be as serious as Ms. Rich alleged because she was not compliant with wearing the compression stockings that had lately been prescribed. The ALJ did not acknowledge, however, Ms. Rich's rational explanation that the stockings roll down, cut into her legs, and cause severe pain. Second, the ALJ stated that Ms. Rich's medical treatment had been only conservative and routine, and not something that a person with her allegedly disabling impairments would be expected to have undergone. It is not clear to the court, however, what additional treatment the ALJ had in mind. Ms. Rich has undergone knee surgery and injections, has worn a splint/brace and a boot, used a cane, taken medication for her

pain and her severe edema, has had physical therapy, and is under the care of a vein clinic to address her chronic venous insufficiency.[5]

Third, the ALJ stated that Ms. Rich's impairments were at approximately the same level of severity after her alleged onset as they were before and since she was not prevented from working before, she isn't now. That's a superficial, and inaccurate, view of the record evidence, and does not take into account that the ALJ himself found that Ms. Rich is not now physically capable of the demands of her prior work.

These matters should be re-addressed on remand.

## **Conclusion**

For the foregoing reasons, the court REVERSES AND REMANDS under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Ms. Rich is not disabled.

So ORDERED.

Dated: September 26, 2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[5] Particularly perplexing is the ALJ's statement that Ms. Rich's testimony about her limited daily living activities are not believable because they cannot be "objectively verified" and even if they are as limited as she says, "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (R. 24). The court has seen this same phrasing in many ALJ disability decisions and it provides no useful guide to the path of the ALJ's reasoning. *See Moore v. Colvin,* 743 F.3d 1118, 1125-26 (7th Cir. 2014) (criticizing this phraseology). The court does not understand what the ALJ envisions as "objective" verification of Ms. Rich's daily living activities and cannot determine what "other factors" in the decision detract from Ms. Rich's reports. Nor is it at all clear that the medical evidence is "relatively weak."

11

Distribution:

All ECF-registered counsel of record by email through the court's ECF system